**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALANA CIMILLO, | Case No. 7:21-cv-09132-VB |
| Plaintiff, | |
| v. | |
| AFFIRM, INC., and EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendants. | |

**EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

JONES DAY
250 VESEY STREET
NEW YORK, NEW YORK  10281
TEL: (212) 326-3939

ATTORNEYS FOR DEFENDANT
EXPERIAN INFORMATION SOLUTIONS, INC.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 3

LEGAL ARGUMENT ............................................................................................................... 7

   I.    THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION ...................... 7

       A.   A Valid Agreement to Arbitrate Exists ...................................................... 8

       B.   EIS May Directly Enforce The Arbitration Agreement ............................. 10

       C.   At A Minimum, However, EIS Is A Third-Party Beneficiary ................... 13

            1.   Whether EIS Is A Third-Party Beneficiary Has Been Delegated To An Arbitrator To Decide ........................................................................... 13

            2.   Even If This Court Were To Decide The Question, EIS Plainly Is A Third-Party Beneficiary ........................................................................ 17

       D.   Plaintiff's Claims Are Arbitrable ............................................................. 18

   II.   THE ACTION MUST BE STAYED PENDING ARBITRATION ................................. 21

CONCLUSION ........................................................................................................................ 22

# TABLE OF AUTHORITIES

Page

CASES

*Abel v. All Green Bldg. Servs. of N.Y. LLC*,
  No. 16-CV-8522, 2017 WL 5468764 (S.D.N.Y. Nov. 14, 2017)..........................................22

*ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*,
  307 F.3d 24 (2d Cir. 2002)......................................................................................................21

*Adams v. AT&T Mobility, LLC*,
  524 F. App'x 322 (9th Cir. 2013) ...........................................................................................13

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011).................................................................................................................8

*AT&T Tech, Inc. v. Communications Workers of America*,
  475 U.S. 643 (1986).............................................................................................................8, 14

*Bakon v. Rushmore Serv. Ctr., LLC*,
  2017 WL 2414639 (E.D.N.Y. June 2, 2017) .........................................................................18

*Banh v. Am. Honda Motor Co.*,
  Case No. 2:19-cv-05984-RGK-AS, 2020 WL 5035095 (C.D. Cal.
  July 28, 2020).........................................................................................................................18

*Bayco Prod., Inc. v. ProTorch Co., Inc.*,
  No. 4:19-cv-00648-ALM, 2020 WL 2574626 (E.D. Tex. May 21, 2020) .............................13

*Belyea v. GreenSky, Inc.*,
  Case No. 20-cv-01693-JSC, 2021 WL 1338552 (N.D. Cal. Apr. 9, 2021) ............................13

*Biggs v. Midland Credit Mgmt., Inc.*,
  No. 17-CV-340, 2018 WL 1225539 (E.D.N.Y. Mar. 9, 2018).................................................9

*Blanton v. Domino's Pizza Franchising LLC*,
  962 F.3d 842 (6th Cir. 2020) ..................................................................................................16

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006)..................................................................................................................8

i

*Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*,
    No. 04-CV-299, 2004 WL 1386145 (S.D.N.Y. June 22, 2004) ................................9

*Carrillo v. ROICOM USA, LLC*,
    486 F. Supp. 3d 1052 (W.D. Tex. 2020)................................................................13

*Clemons v. Midland Credit Management, Inc.*,
    1:18-cv-16883-NLH-AMD, 2019 WL 3336421 (D.N.J. July 25, 2019)..............13

*Clookey v. Citibank, N.A.*,
    No. 14-CV-1318, 2015 WL 8484514 (N.D.N.Y. Dec. 9, 2015)..............................8

*Collins & Aikman Products Co. v. Building Systems, Inc.*,
    58 F.3d 16 (2nd Cir. 1995)....................................................................................21

*Coulter v Experian Information Solutions, Inc.*,
    2021 WL 735726 (E.D. Pa. Feb. 25, 2021) ..........................................1, 2, 10, 19

*Crawford v. Beachbody, LLC*,
    No. 14-cv-1583-GPC (KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014) ..........10

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)................................................................................................19

*Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*,
    756 F.3d 1098 (8th Cir. 2014) ..............................................................................16

*Fikham v. BMW of North America LLC*,
    No. 19-03963 VAP, 2019 WL 6721626 (C.D. Cal. Oct. 15, 2019) .......................18

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)................................................................................................14

*Forrest v. Verizon Commc'ns, Inc.*,
    805 A.2d 1007 (D.C. 2002) ...................................................................................10

*Fteja v. Facebook, Inc.*,
    841 F. Supp. 2d 829 (S.D.N.Y. 2012)................................................................9, 10

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987)....................................................................................9

*George v. Rushmore Service Center, LLC*,
    18-cv-13698, 2020 WL 2319293 (D.N.J. May 11, 2020)......................................12

*Gillespie v. Equifax Info. Servs., LLC*,
   484 F.3d 938 (7th Cir. 2007) ................................................................2

*Gold v. Deutsche Aktiengesellschaft*,
   365 F.3d 144 (2d Cir. 2004)................................................................9

*Graf v. Match.com, LLC*,
   No. CV 15-3911 PA, 2015 WL 4263957 (C.D. Cal. July 10, 2015).......................10

*Greater N.Y. Mut. Ins. Co. v. Rankin*,
   298 A.D.2d 263 (N.Y. App. Div. 2002) ..................................................18

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000)..........................................................................8

*Green v. Serv. Corp. Int'l*,
   333 F. App'x 9 (5th Cir. 2009) ............................................................13

*Hacohen v. BMW of North America, LLC*,
   Case No. CV 21-0464-MWF, 2021 WL 4352364 (C.D. Cal. July 23, 2021) .........19

*Harris v. Midland Credit Management, Inc.*,
   Civil Action No. 15-4453 (SDW)(SCM), 2016 WL 475349 (D. N.J.
   Feb. 8, 2016) .................................................................................13

*Henry Schein Inc. v. Archer & White Sales Inc.*,
   —— U.S. ——, 139 S. Ct. 524, 202 L.Ed.2d 480 (2019)...............................14, 19

*Herrera v. Verra Mobility Corp.*,
   No. CV-20-00515-PHX-DWL, 2020 WL 6781269 (D. Az. Nov. 18, 2020) .........18

*In re Am. Express Fin. Advisors Secs. Litig.*,
   672 F.3d 113 (2d Cir. 2011)................................................................8

*In re Generali COVID-19 Travel Ins. Litig.*,
   2021 WL 6052127 (S.D.N.Y. Dec. 21, 2021) ..........................................17

*In re Online Travel Co.*,
   953 F. Supp. 2d 713 (N.D. Tex. 2013) ..................................................10

*Katsoris v. WME IMG, LLC*,
   237 F. Supp. 3d 92 (S.D.N.Y. 2017).....................................................15

*Klein v. Experian Information Solutions, Inc.*,
  2020 WL 6365766 (S.D.N.Y. Oct. 29, 2020) ...........................................................................8

*Lacayo v. BMW of N. Am. LLC*,
  2020 WL 3971307 (N.D. Cal. July 13, 2020) ..........................................................................18

*Lebovits v. Cavalry Portfolio Services, LLC*,
  No. 20-CV-01116 (KMK), 2021 WL 1198967 (S.D.N.Y. Mar. 29, 2021) ......................20, 21

*Long v. Amway Corp.*,
  306 F. Supp. 3d 601 (S.D.N.Y. 2018) .......................................................................................9

*Marcus v. Frome*,
  275 F. Supp. 2d 496 (S.D.N.Y. 2003) ......................................................................................21

*Mobile Real Estate, LLC v. NewPoint Media Group, LLC*,
  460 F. Supp. 3d 457 (S.D.N.Y. 2020) ...............................................................................14, 15

*Morgan v. Experian Information Solutions, Inc.*,
  C21-5783-JCC, 2022 WL 681359 (W.D. Wash. Mar. 4, 2022) .................................... *passim*

*NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*,
  770 F.3d 1010 (2d Cir. 2014) .................................................................................................14

*Nicholas v. Wayfair Inc.*,
  410 F. Supp. 3d 448 (E.D.N.Y. 2019) .....................................................................................18

*Oldroyd v. Elmira Sav. Bank, FSB*,
  134 F.3d 72 (2d Cir. 1998) ......................................................................................................21

*Register.com, Inc. v. Verio, Inc.*,
  356 F.3d 393 (2d Cir. 2004) ......................................................................................................9

*Rent-A-Center, West, Inc. v. Jackson*,
  561 US 63 (2010) .....................................................................................................................19

*Richert v. Nat'l Arb. Forum, LLC*,
  No. 09-cv-763, 2009 WL 3297565 (D. Minn. Oct. 13, 2009) .................................................12

*Ridgeway v. Nabors Completion & Prod. Servs. Co.*,
  725 F. App'x 472 (9th Cir. 2018) ............................................................................................13

*Rizvi v. BMW of North America LLC*,
  Case No. 5:20-cv-00229-EJD, 2020 WL 2992859 (N.D. Cal. June 4, 2020) .........................18

*Roberson v. Experian Information Solutions, Inc.*,
    SA-21-CV-00316-JKP, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022)............................1, 2, 3, 12

*Sanzone-Ortiz v. Aetna Health of California, Inc.*,
    No. 15-cv-03334-WHO, 2015 WL 9303993 (N.D. Cal. Dec. 22, 2015)................................13

*Saratoga Schenectady v. Bette & Cring, LLC*,
    83 A.D.3d 1256 (N.Y. App. Div. 2011) ........................................................................17, 18

*Shearson/Am. Express v. McMahon*,
    482 U.S. 220 (1987).....................................................................................................................8

*Stephens v. Experian Information Solutions, Inc.*,
    ---F. Supp. 3d---, 2022 WL 2716177 (D. Haw. July 13, 2022) ...................................... *passim*

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................................................................................10

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*,
    182 F.R.D. 97 (S.D.N.Y. 1998) ...............................................................................................21

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
    464 F. Supp. 3d 634 (S.D.N.Y. 2020)......................................................................................10

*Vera v. Saks & Co.*,
    218 F. Supp. 2d 490 (S.D.N.Y. 2002)......................................................................................21

*Wang v. Bear, Stearns & Co.*,
    2009 WL 10675213 (C.D. Cal. Nov. 12, 2009).......................................................................13

*WorldCrisa Corp. v. Armstrong*,
    129 F.3d 71 (2nd Cir. 1997)........................................................................................................8

*Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*,
    CV 19-10337-DSF, 2020 WL 2730926 (C.D. Cal. Mar. 13, 2020) .........................................17

Experian Information Solutions, Inc. ("EIS"), by and through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to Compel Arbitration and Stay this Action.

## PRELIMINARY STATEMENT

This is an action under the Fair Credit Reporting Act ("FCRA").  The plaintiff, Alana Cimillo, alleges that defendant EIS violated the FCRA and its New York state law equivalent in reporting information related to loans with defendant Affirm, Inc.  Specifically, Plaintiff claims that the Affirm loans were fraudulently opened by her ex-boyfriend in her name and, although some were paid in full, others went to collections.  She asserts that EIS did not maintain reasonable procedures to ensure the accuracy of the credit information contained in a consumer report, failed to conduct a reasonable reinvestigation of her dispute, failed to block information appearing on her credit file, and did not consider all relevant information that she claims to have provided to EIS.  She alleges that EIS's conduct was both negligent and willful.  Although the claims lack merit, EIS elects to adjudicate them in arbitration.

The outcome of this motion should be the same as that in *Stephens v. Experian Information Solutions, Inc.*, ---F. Supp. 3d---, 2022 WL 2716177 (D. Haw. July 13, 2022), *Morgan v. Experian Information Solutions, Inc.*, C21-5783-JCC, 2022 WL 681359 (W.D. Wash. Mar. 4, 2022), *Roberson v. Experian Information Solutions, Inc.*, SA-21-CV-00316-JKP, 2022 WL 62270 (W.D. Tex. Jan. 5, 2022), and *Coulter v Experian Information Solutions, Inc.*, 2021 WL 735726 (E.D. Pa. Feb. 25, 2021).  Like the plaintiffs in those cases, the Plaintiff here is a member of CreditWorks—a free online credit monitoring product that is provided by EIS's affiliate, ConsumerInfo.com, Inc. (which does business as Experian Consumer Services ("ECS")).  As in those cases, Plaintiff's CreditWorks membership predates the filing of this

lawsuit. That membership afforded Plaintiff access to credit information in her EIS credit file. In signing up for CreditWorks, Plaintiff provided consent under the FCRA for EIS to disclose information in her credit file. "A primary purpose" of the FCRA "is to allow consumers to identify inaccurate information in their credit files and correct this information via the grievance procedure established under" the statutory scheme. *Gillespie v. Equifax Info. Servs., LLC*, 484 F.3d 938, 941 (7th Cir. 2007). Here, using her CreditWorks membership, Plaintiff obtained reports and alerts that disclosed how the Affirm accounts at issue in this case were being reported. Using that same information, Plaintiff filed disputes with EIS, and when those disputes were not resolved to her satisfaction, initiated this lawsuit.

Just like in *Stephens*, *Morgan*, *Roberson*, and *Coulter*, when Plaintiff enrolled in CreditWorks, she agreed to the Terms of Use governing that service. That contract contains an arbitration agreement. The "Overview and Acceptance of Terms" provision, as well as the Arbitration Agreement itself, expressly defines "ECS" to include its "affiliates." During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS. The Arbitration Agreement provides that Plaintiff and "ECS"—which, again, is defined under the contract to include EIS—agreed to arbitrate "all disputes and claims between us" that "aris[e] out of or relat[e] to" her use of her CreditWorks subscription. As a party to the broader contract, as well as the Arbitration Agreement contained therein (by virtue of how ECS is defined), EIS may directly enforce the arbitration provision. At a minimum, however, EIS is a third-party beneficiary of the contract.

While the Arbitration Agreement that Plaintiff agreed to delegates "all issues" to an arbitrator—including all questions regarding arbitrability, enforceability and scope—Plaintiff's claim fall within the arbitration clause, as they "aris[e] out of or relat[e] to" her use of

CreditWorks.  *See Stephens*, 2022 WL 2716177, at *6 ("This court is not persuaded by Stephens that the arbitrator, who is authorized in the arbitration provision to determine the gateway issue of arbitrability, will send the matter back to this court."); *Roberson*, 2022 WL 62270 ("Plaintiff agreed to arbitrate its claims against ECS, as well as its parent entities, subsidiaries, and affiliates.  It is undisputed that ECS is an affiliate of Experian."); *Morgan*, 2022 WL 681359 ("It is undisputed that the TOU [Terms of Use] applies to ECS affiliates and Plaintiff offers no cogent argument why EIS should not be considered one.  . . . And to the extent that EIS's credit bureau services are not within the scope of services covered by the TOU and, resultingly, the arbitration agreement, this is an issue the TOU has reserved for the arbitrator to decide.").  This Court should now rule in the same manner.

Thus, under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, EIS respectfully moves for an order compelling this matter to arbitration, as required under Plaintiff's written agreement, and staying this action until arbitration has been completed.

## STATEMENT OF FACTS

On July 28, 2019, Plaintiff enrolled in CreditWorks.  *See* accompanying Declaration of David Williams (Williams Decl.), ¶ 3.  In order to successfully enroll, Plaintiff had to complete two webforms.  *Id*. and Exs. 1 and 2.  The first form required Plaintiff to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address.  *Id*., ¶ 3 and Ex. 1. After she did so, Plaintiff had to click the "Submit and Continue" button on the form to continue with the enrollment process.  *Id*.  A true and correct representation of the first webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as Exhibit 1 to the Williams Declaration.  *Id*.  Plaintiff clicked the "Submit and Continue" button, and was presented with a second form to complete.  *Id*.

3

The second webform required Plaintiff to enter her social security number, date of birth, and a username and password. *Id*., ¶ 4. Immediately below the boxes to enter and confirm her password, was the following disclosure: "By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." *Id*. A true and correct representation of the second webform as it would have appeared when Plaintiff enrolled in CreditWorks is attached as Exhibit 2 to the Williams Declaration. *Id*., ¶ 4 and Ex. 2. The phrase "Terms of Use Agreement" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. *Id*. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. *Id*. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "Terms of Use Agreement." *Id*. When a consumer clicked on the Terms of Use Agreement" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. *Id*. Immediately below the disclosure containing the full-text hyperlink to the Terms of Use Agreement was a large purple button that reads: "Submit Secure Order." *Id*. The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage. *Id*.

After entering her information, Plaintiff clicked the "Submit Secure Order" order button, thereby accepting and agreeing to the Terms of Use Agreement. *Id*., ¶ 5. She would not have been able to successfully enroll in CreditWorks unless she clicked that button. *Id*. A true and correct copy of the Terms of Use that was in effect when Plaintiff enrolled in CreditWorks is attached as Exhibit 3 to the Williams Declaration. *Id*., ¶ 5 and Ex. 3. After

enrolling, Plaintiff has continuously used her service, including after the current version of the Terms of Use came into effect. *Id*., ¶ 5. A true and correct copy of the current (operative) version of the Terms of Use Agreement is attached as Exhibit 4 to the Williams Declaration. *Id*., ¶ 5 and Ex. 4.

The Terms of Use Agreement has a section entitled, "Amendments," which advised Plaintiff that she would be bound by the then-current Terms of Use each time she "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement: "Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." *Id*., ¶ 6 and Exs. 3 & 4. While all versions of the Terms of Use allowed Plaintiff to opt-out of amendments to the arbitration clause, at no time did Plaintiff ever reject any changes that were made. *Id*., ¶ 6. As noted, after she enrolled in CreditWorks, Plaintiff has continuously used CreditWorks, which binds her to the current version of the Terms of Use Agreement. *Id*.

Every version of the Terms of Use that was in effect during Plaintiff's enrollment in CreditWorks contains an Arbitration Agreement, which requires her to litigate, among other things, "all disputes and claims between us arising out of or relating to this Agreement to the maximum extent permitted by law." *Id\*., ¶ 7 and Ex. 4. The Arbitration Agreement defines "ECS" and "us" to include its "parent entities, subsidiaries, [and] affiliates . . . ." *Id*. So does the "Overview and Acceptance of Terms" section of the contract. *Id*. During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS. *Id*. By including EIS (an affiliate) within the definition of "ECS," the Terms of Use make EIS a party to the contract, as well as a party to the Arbitration Agreement contained within that contract. *Id*. Moreover, by including EIS within the "Overview and Acceptance of Terms"

section, as well as within the definition of ECS in the Arbitration Agreement, the parties intended for EIS to benefit under the contract.  *Id.*  The Arbitration Agreement expressly incorporates the AAA rules.  *Id.*, ¶ 7 and Exs. 3 & 4 ("[T]he AAA Rules shall govern the parties' dispute[.]").

At all times relevant to this action, EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information.  *Id.*, ¶ 8.  Further, all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from EIS through CreditWorks.  *Id.*  The Terms of Use cover the provision of "Services," which is defined to include services to which EIS contributed as the provider of credit information—including CreditWorks and the provision of "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), the receipt of any alerts notifying [consumers] of changes to the information contained in [their] credit report(s)."  *Id.*

In her operative complaint, Plaintiff alleges that EIS reported inaccurate information about various Affirm accounts.  Plaintiff learned how EIS was reporting those accounts through her CreditWorks subscription.  *Id.*, ¶ 9.  Throughout 2019, Plaintiff received alerts through CreditWorks concerning the Affirm accounts.  *Id.*  She also obtained numerous credit reports through CreditWorks that would have shown how the Affirm accounts were reporting on her EIS credit file.  *Id.*  On January 2, 2021, Plaintiff obtained another credit report through CreditWorks that would have shown how the Affirm accounts were reporting on her EIS credit file.  *Id.*  That same day, Plaintiff lodged a dispute with EIS over the reporting of the Affirm

accounts. *Id.* Plaintiff sent multiple additional disputes to EIS, each time logging on to CreditWorks to obtain a credit report at or near the time of the dispute. *Id.* In her operative complaint, Plaintiff alleges that, between July 2021 and October 2021, she applied for credit with three different car dealerships. At the time of each of those applications, Plaintiff obtained credit reports and alerts through CreditWorks. *Id.*

## LEGAL ARGUMENT

## I.    THE COURT SHOULD COMPEL THIS MATTER TO ARBITRATION

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision "reflect[s] both a 'liberal federal policy favoring arbitration' and the 'fundamental principle that arbitration is a matter of contract,'" such that "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).[1]

Pursuant to the FAA, arbitration must be compelled where, as here: (1) the parties have entered into a valid agreement to arbitrate, and (2) the dispute at issue comes within the scope of the arbitration agreement. *In re Am. Express Fin. Advisors Secs. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011).[2] The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc.*

---

[1] Section 2 of the FAA applies to arbitration agreements "evidencing a transaction involving [interstate] commerce." 9 U.S.C. § 2. Plaintiff resides in the State of New York, (FAC ¶ 4), and EIS is domiciled in California, (*id.*, ¶ 6). Thus, this requirement is satisfied.

[2] "If federal statutory claims are alleged, the court must also assess whether Congress intended to exempt such claims from arbitration." *Clookey v. Citibank, N.A.*, No. 14-CV-1318, 2015 WL 8484514, at *2 (N.D.N.Y. Dec. 9, 2015) (citing *JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)), reconsideration denied, 2016 WL 3365438 (N.D.N.Y. June 16, 2016). Congress has not exempted FCRA claims from arbitration. *See, e.g.*, *Klein v. Experian Information Solutions, Inc.*, 2020 WL 6365766, at *7 (S.D.N.Y. Oct. 29, 2020) ("[I]t is well-established that FCRA claims are arbitrable.").

*v. Cardegna*, 546 U.S. 440, 443 (2006).  An arbitration agreement governed by the FAA, like

the arbitration agreement here, is presumed to be valid and enforceable. *Shearson/Am. Express*

*v. McMahon*, 482 U.S. 220, 226 (1987).  There is a presumption in favor of arbitrability, *AT&T*

*Tech,, Inc. v. Communications Workers of America*, 475 U.S. 643, 650 (1986), and the party

seeking to evade arbitration bears the burden of showing that the arbitration provision is invalid

or does not encompass the claims at issue.  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S.

79, 92 (2000).  Indeed, "the existence of a broad agreement to arbitrate creates a presumption of

arbitrability which is only overcome if 'it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts

should be resolved in favor of coverage.'" *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74

(2nd Cir. 1997) (quoting *Associated Brick Mason Contractors of Greater New York, Inc. v.*

*Harrington*, 820 F.2d 31, 35 (2d Cir. 1987).

As demonstrated below, the arbitration agreement in the Terms of Use Agreement is

valid and, although the question of arbitrability is for an arbitrator to decide, the controversy

between Plaintiff and EIS falls within the arbitration agreement's broadly-worded scope.

A.    <u>A Valid Agreement to Arbitrate Exists</u>

"Whether one can be bound by an arbitration clause is usually determined by looking at

generally accepted principles of contract law." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d

144, 149 (2d Cir. 2004) (collecting cases).  Pursuant to these principles, "a party is bound by

the provisions of a contract that he signs, unless he can show special circumstances that would

relieve him of such an obligation." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d

Cir. 1987), abrogated on other grounds by *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S.

20, 26 (1991); *see also Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04-CV-299,

2004 WL 1386145, at *5 (S.D.N.Y. June 22, 2004) ("An individual who signs a contract is presumed to know its contents and assent to them, unless he can show special circumstances, such as duress or coercion, which would justify non-enforcement of the contract." (citation and quotation marks omitted)). "[T]he party seeking to compel arbitration has the burden of demonstrating by a preponderance of the evidence the existence of an agreement to arbitrate." *Biggs v. Midland Credit Mgmt., Inc.*, No. 17-CV-340, 2018 WL 1225539, at *8 (E.D.N.Y. Mar. 9, 2018) (citation omitted).

Under New York law, an agreement to arbitrate disputes is enforceable if it is a valid contract. *Long v. Amway Corp.*, 306 F. Supp. 3d 601, 607 (S.D.N.Y. 2018). That standard is easily met here. Courts within this Circuit routinely enforce internet agreements where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website. *See, e.g.*, *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004); *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 837 (S.D.N.Y. 2012) (clickwrap agreements are a common type of web-based contract; they are formed when a user is presented with "a message on his or her computer screen" and is required to "manifest [ ] her assent to the terms"); *Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634 (S.D.N.Y. 2020) ("The Second Circuit routinely enforces clickwrap agreements as valid and binding contracts, 'for the principal reason that the user has affirmatively assented to the terms of agreement by clicking "I agree.""") (quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017); *Fteja*, 841 F. Supp. 2d at 837 (collecting cases); *Forrest v. Verizon Commc'ns, Inc.*, 805 A.2d 1007, 1011 (D.C. 2002) ("A contract is no less a contract simply because it is entered into via a computer."); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 719-20 (N.D. Tex. 2013)

(compelling arbitration because "it was impossible to complete a transaction on the Travelocity website in the absence of affirmative assent to the User Agreement").

As a matter of law, Plaintiff agreed to the Terms of Use because:  (1) she had clear notice of the Terms of Use at the time she enrolled, (2) she was admonished that, by clicking an adjacent button, she was agreeing to be bound by the Terms of Use; and (3) she clicked the button, thereby manifesting her assent to the Terms of Use.   Numerous courts, under the same or analogous facts, have found that website users were bound by the Terms of Use.  *See Coulter*, 2021 WL 735726; *Graf v. Match.com, LLC*, No. CV 15-3911 PA (MRWx), 2015 WL 4263957 (C.D. Cal. July 10, 2015); *Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC (KSC), 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014); *Fteja*, 841 F. Supp. 2d at 837 (S.D.N.Y. 2012); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911 (N.D. Cal. 2011).

### B.    EIS May Directly Enforce The Arbitration Agreement

In the traditional world of paper contracts, it is usually easy to tell who the parties to an agreement are—you just look at the signature lines. With online consumer contracting, however, the matter is sometimes more complicated.  Online entities often work closely with a number of affiliated corporate entities to provide customers with a single integrated service, and there is often no signature line to consult in the Terms of Use that result from these interactions. Nonetheless, the hornbook principles of contract law remain: the parties to a contract are those who agreed to be bound by its obligations.  *See, e.g.*, Williston on Contracts § 1.1 (defining a "contract" as "a promise or set of promises for breach of which the law gives a remedy") (4th ed. May 2021 Update); *id.* § 1.2 (defining a "promise" as a commitment between a promisor and a promisee); Restatement (Second) of Contracts §§ 1, 2 (same).

Under these principles, EIS's status as a party to the Arbitration Agreement is beyond dispute. To start, the "Overview and Acceptance of Terms" section defines ECS to include its affiliates, such as EIS. Williams Decl., Ex. 4. The Arbitration Agreement contained within the Terms of Use does the same. *Id*. Indeed, it includes a straightforward, bilateral promise: "ECS and you agree to arbitrate all disputes and claims between us arising out of or relating to this Agreement to the maximum extent permitted by law[.]" *Id*. And the Arbitration Agreement clearly identifies the promisors and promisees—that is, the parties—with respect to that promise: "For purposes of this arbitration provision, references to 'ECS,' 'you,' and 'us' shall include our respective parent entities, subsidiaries, affiliates. . . ." *Id*. As an affiliate of ECS, EIS is swept within the definitions of "ECS" and "us" under the Arbitration Agreement, and thus qualifies as a promisee (and promisor) entitled to enforce the Arbitration Agreement that Plaintiff entered.

There is nothing surprising about this result. Courts routinely have held that materially identical language creates a binding contract enforceable by the parties identified as making promises with each other. Recently, in *Morgan v. Experian*, the court held, when evaluating the ***same*** Terms of Use at issue here, that "[i]t is undisputed that the TOU applies to ECS affiliates and Plaintiff offers no cogent argument why EIS should not be considered one." 2022 WL 681359, at *1. *Roberson v. Experian*—yet another recent case which involved the same Terms of Use at issue here—held that plaintiff "agreed to arbitrate its claims against ECS, as well as its parent entities, subsidiaries, and affiliates." 2022 WL 62270 at *4. The court further noted "[i]t is undisputed that ECS is an affiliate of Experian." *Id*. Consequently, the court granted EIS's motion to compel arbitration.

Courts throughout the country are in accord with *Morgan* and *Roberson*. In *Richert v. Nat'l Arb. Forum, LLC*, No. 09-cv-763, 2009 WL 3297565 (D. Minn. Oct. 13, 2009), for example, the plaintiff opposed a motion to compel arbitration on the ground that defendants were not signatories on the operative contract. The court overruled objections to the Magistrate's report and recommendations, and compelled arbitration. It noted that "[t]he arbitration provision is broad and unambiguous covering any dispute between the FORUM and Employee or claim by either against the other or *any agent or affiliate of the other*, whether related to this agreement or otherwise. Therefore, the plain language of the arbitration provision expresses an intent to bind third-party agents or affiliates of the Forum or the Employee." *Id.* at *2 (emphasis in original). Similarly, in *George v. Rushmore Service Center, LLC*, 18-cv-13698, 2020 WL 2319293, at *2 (D.N.J. May 11, 2020), the court, in granting the motion to compel arbitration, explained that, under the contract, "arbitration [wa]s mandatory for claims by 'you or us,' which explicitly includes FPB and 'the employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us.'" The court in *Clemons v. Midland Credit Management, Inc.*, 1:18-cv-16883-NLH-AMD, 2019 WL 3336421, at *3-4 (D.N.J. July 25, 2019), on similar facts, held the same. The court *Belyea v. GreenSky, Inc.*, Case No. 20-cv-01693-JSC, 2021 WL 1338552 (N.D. Cal. Apr. 9, 2021), likewise granted the motion to compel arbitration because the contract specified that "Claims . . . that arise between you and us will be resolved through binding arbitration," and the contract defined "us" to include "any corporate parent, wholly or majority owned subsidiaries, affiliates, . . . and any third party providing any product, service or benefit in connection with the Agreement." 2021 WL 1388552, at *2–3. The court rejected plaintiff's argument that GreenSky, the loan servicer, could not enforce the agreement as a party—holding that because GreenSky "f[e]ll within the

Arbitration Provision's definition of 'us,'" it qualified as a "party" that could "move to compel arbitration." *Id.* at *3; *see also Sanzone-Ortiz v. Aetna Health of California, Inc.*, No. 15-cv-03334-WHO, 2015 WL 9303993, at *6 (N.D. Cal. Dec. 22, 2015) (dismissing plaintiff's argument that the defendant was not a party to the arbitration agreement because the plaintiff's "limited reading of the agreement ignore[d] that the arbitration provision applies to . . . *affiliates* as well.") *Id.* at *6.[3]

In short, by disclosing to users they are agreeing to arbitrate with ECS's affiliates, and requiring affirmative action by Plaintiff to assent to those terms, Plaintiff is bound by the Terms of Use Agreement and its obligation that she arbitrate her claims against EIS. *Morgan*, 2022 WL 681359, at *1-2.

## C.    At A Minimum, However, EIS Is A Third-Party Beneficiary

Even if the Court were to conclude that EIS cannot directly enforce the Arbitration Agreement as a party thereto, EIS may nonetheless compel arbitration as a third-party beneficiary of the contract.

### 1.    Whether EIS Is A Third-Party Beneficiary Has Been Delegated To An Arbitrator To Decide

If there is any dispute over whether EIS qualifies as a third-party beneficiary, that issue is to be resolved by an arbitrator. By default, the parties to an arbitration agreement are presumed to have left such questions of arbitrability to the courts. *See*, *e.g.*, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). They may alter this background rule,

---

[3] Numerous other decisions on similar facts are in accord. *See*, *e.g.*, *Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472, 474 (9th Cir. 2018); *Adams v. AT&T Mobility, LLC*, 524 F. App'x 322, 324 (9th Cir. 2013); *Green v. Serv. Corp. Int'l*, 333 F. App'x 9 (5th Cir. 2009); *Wang v. Bear, Stearns & Co.*, 2009 WL 10675213, at *1 (C.D. Cal. Nov. 12, 2009); *Carrillo v. ROICOM USA, LLC*, 486 F. Supp. 3d 1052, 1062 (W.D. Tex. 2020); *Bayco Prod., Inc. v. ProTorch Co., Inc.*, No. 4:19-cv-00648-ALM, 2020 WL 2574626 (E.D. Tex. May 21, 2020); *Harris v. Midland Credit Management, Inc.*, Civil Action No. 15-4453 (SDW)(SCM), 2016 WL 475349, at *2 (D. N.J. Feb. 8, 2016).

however, by agreeing to send questions of arbitrability to an arbitrator along with the rest of the underlying dispute. Where the contract "clearly and unmistakably" does so, a court must enforce this distinct agreement by compelling disputes about arbitrability into arbitration. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *NASDAQ OMX Grp., Inc. v. UBS Secs., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014).

"[W]hen ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Mobile Real Estate, LLC v. NewPoint Media Group, LLC*, 460 F. Supp. 3d 457, 470 (S.D.N.Y. 2020) (quoting *Contec Corp. v. Remote Sol., Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Henry Schein Inc. v. Archer & White Sales Inc.*, ⸺ U.S. ⸺, 139 S. Ct. 524, 529, 202 L.Ed.2d 480 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."). Like the contract at issue in *Mobile Real Estate*, the Terms of Use expressly incorporate the AAA's commercial rules. Williams Decl., Ex. 4 ("[T]he AAA Rules shall govern the parties' dispute[.]"). This incorporation "serves as 'clear and unmistakable evidence' of the intent to delegate questions of arbitrability." *Mobile Real Estate*, 460 F. Supp. 3d at 470 (citation omitted) (collecting cases). "[A] signatory to a contract containing an arbitration clause and incorporating by reference the AAA Rules may not disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability." *Id*. (emphasis in original) (citations omitted).

Under these principles, courts regularly have sent questions about a third party's ability to enforce an arbitration agreement against a signatory to an arbitrator for resolution in the first instance. As the court explained in *Mobile Real Estate*, "a corporate relationship is a 'sufficient

relationship'" to allow the question of arbitrability to be delegated. *Id*. at 477 (quoting *Int'l Eng'g & Constr. S.A. v. Baker Hughes*, 399 F. Supp. 3d 194, 203 (S.D.N.Y. 2019) (determining that because the non-signatories had a "parent/subsidiary relationship" with one of the signatories, there was a sufficient relationship between them, and the question of arbitrability could be delegated to an arbitrator) (collecting cases)); *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 106 (S.D.N.Y. 2017) (same).  Here, there is an undisputed relationship between ECS—an unquestioned signatory to the contract—and EIS:  They are corporate affiliates and share a common parent.  Williams Decl., ¶¶ 2, 7.  Thus, "where a party seeking to avoid arbitration is a signatory to an arbitration agreement which incorporates rules that delegate arbitrability questions to the arbitrator, a court need not reach the issue of whether a non-signatory may compel arbitration, because that is an issue properly resolved by the arbitrator." *Mobile Real Estate*, 460 F. Supp. 3d at 477.

Courts across the country are in accord.  For example, in *Sauer v. Experian*, the court granted EIS's motion to compel arbitration under the CreditWorks Terms of Use, finding that "the dispute over whether Experian is a third-party beneficiary should go to the arbitrator." *Sauer*, Case No. 8:21-cv-00963-JLS-DFM (C.D. Cal. May 12, 2022), Dkt. No. 49 ("Plaintiff agreed that 'the arbitrator shall have exclusive authority to resolve any such dispute relating to the scope and enforceability of this arbitration provision or any other term of this Agreement.'"); *see also Morgan*, 2022 WL 681359, at *1 (granting motion to compel arbitration and noting that "to the extent that [Experian's] services are not within the scope of services covered by the TOU and, resultingly, the arbitration agreement, this is an issue the TOU has reserved for the arbitrator to decide"); *see also Stephens*, 2022 WL 2716177, at *6 ("Applying *Brennan* [*v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)], this court concludes

that the parties [to the CreditWorks contract] have clearly and unmistakably delegated the issue of arbitrability to the arbitrator.").

Similarly, in *Portland General Electric Co. v. Liberty Mutual Insurance Co.*, PGE had a guaranty contract with Abengoa that included an arbitration clause and provided that, once arbitration began, either side could implead third parties into the arbitration. *See* 862 F.3d 981, 983–84 (9th Cir. 2017). Abengoa initiated an arbitration and impleaded the sureties who would be liable to PGE in the event PGE's contractor had defaulted (as it claimed and Abengoa disputed). *See id.* at 984. PGE filed suit against the sureties in federal court, complaining that it had never agreed to arbitrate with them. *See id.* Although the district court agreed with PGE, the Ninth Circuit did not, finding that, by incorporating rules similar to those found in the AAA, PGE had "delegated to the arbitrators" questions such as "whether PGE ha[d] . . . agreed to arbitrate its dispute against the [s]ureties." *Id.* at 985; *see also Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 843–44, 852 (6th Cir. 2020) (same); *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014) (sending the question of "[w]hether a particular arbitration provision may be used to compel arbitration between a signatory and a non-signatory" to the arbitrator because the arbitration agreement incorporated the AAA Rules); *Worldwide Film Prods., LLC v. JPMorgan Chase Bank, N.A.*, CV 19-10337-DSF (JPRx), 2020 WL 2730926, at *2–3 (C.D. Cal. Mar. 13, 2020) (same).

Under this precedent, an arbitrator must resolve any doubts about EIS's ability to compel arbitration as a third-party beneficiary. Not only does the Arbitration Agreement incorporate the AAA rules, *see* Williams Decl., Exs. 3 and 4, but the delegation clause broadly provides: "***All issues*** are for the arbitrator to decide, including the scope and enforceability of this arbitration provision[.]" *Id.* (emphasis added). Because the delegation clause in the sends

gateway questions of arbitrability to the arbitrator, any question about EIS's ability to enforce as a third party belong to an arbitrator too. *Stephens*, 2022 WL 2716177, at *6; *Sauer*, Case No. 8:21-cv-00963-JLS-DFM (C.D. Cal. May 12, 2022), Dkt. No. 49.

### 2.    Even If This Court Were To Decide The Question, EIS Plainly Is A Third-Party Beneficiary

New York, like most other jurisdictions, has recognized the doctrine of third party beneficiary. *Saratoga Schenectady v. Bette & Cring, LLC*, 83 A.D.3d 1256 (N.Y. App. Div. 2011). A third party beneficiary may invoke an arbitration agreement when (1) there exists a valid and binding contract between other parties, (2) the contract was intended to benefit the third party, and (3) the benefit to the third party is sufficiently immediate to indicate the assumption by the contracting parties of a duty to compensate the third party if the benefit is lost. *Id.* at 1256.

New York courts repeatedly have held that a third party named in a contract, either directly or as a member of a specified class, can enforce arbitration provisions as a third-party beneficiary. *In re Generali COVID-19 Travel Ins. Litig.*, 2021 WL 6052127, at *6 (S.D.N.Y. Dec. 21, 2021); *Nicholas v. Wayfair Inc.*, 410 F. Supp. 3d 448, 456 (E.D.N.Y. 2019) (nonparty affiliate could enforce agreement requiring arbitration of "any dispute between you and [] subsidiaries or affiliates" where affiliate had "a close operating relationship" with the signatory); *Saratoga*, 83 A.D.3d at 1257 (plaintiff was a third-party beneficiary even though it was only known as a "related entity" of the party to the contract); *Bakon v. Rushmore Serv. Ctr., LLC*, 2017 WL 2414639, at *3 (E.D.N.Y. June 2, 2017) (holding that non-signatory could enforce arbitration agreement as an affiliate of a signatory because the "agreement identifies a class of parties who are covered by the Agreement in addition to the bank and cardholder, namely the 'employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns of you and us'" and

therefore the affiliate "as a member of this class, was intended as a third party beneficiary who may enforce the Agreement").[4]

Under this authority, EIS—which is an "affiliate" defined as part of "ECS" for purposes of the Arbitration Agreement—qualifies as a third-party beneficiary entitled to enforce the Arbitration Agreement.  By defining "ECS" to include its affiliates (like EIS), EIS clearly is a party who was intended to benefit from the contract, including by arbitrating claims against it pursuant to the contract's express provisions guaranteeing that outcome.  *Hacohen v. BMW of North America, LLC*, Case No. CV 21-0464-MWF, 2021 WL 4352364, at *5 (C.D. Cal. July 23, 2021) (explaining that an arbitration agreement allowing enforcement by affiliates meets this standard).  Why else would the parties specify that "affiliates" fall within ECS for purposes of the Arbitration Agreement?  EIS may compel arbitration as a third-party beneficiary.

### D.    Plaintiff's Claims Are Arbitrable

If there is any question as to whether Plaintiff's claims fall within the scope of the Arbitration Agreement, that issue also is to be decided by an arbitrator:  "All issues are for the arbitrator to decide, including the scope and enforceability of this arbitration provision[.]"

---

[4] Applying New York equivalent standards, courts in other jurisdictions have held, over and over again, that a party named in the arbitration agreement, either directly or as a member of a specified class, can enforce as a third-party beneficiary.  *See, e.g., Lacayo v. BMW of N. Am. LLC*, 2020 WL 3971307, at *1 (N.D. Cal. July 13, 2020) (compelling Lacayo to arbitrate his claims against BMW of North America because the arbitration clause in his agreement with BMW Financial Services "explicitly applie[d] to affiliates" like BMW of North America); *Herrera v. Verra Mobility Corp.*, No. CV-20-00515-PHX-DWL, 2020 WL 6781269, at *6 (D. Az. Nov. 18, 2020) (allowing ATS Processing and ATS Consolidated to enforce an arbitration agreement because the contract "defined 'us' as encompassing vendors and third-party service providers" like them); *Banh v. Am. Honda Motor Co.*, Case No. 2:19-cv-05984-RGK-AS, 2020 WL 5035095, at *5 (C.D. Cal. July 28, 2020) (allowing Honda to "invoke the right to the benefits of the arbitration agreements" in question because one of the parties (Acura) was "defined to include Honda"); *Greater N.Y. Mut. Ins. Co. v. Rankin*, 298 A.D.2d 263, 263 (N.Y. App. Div. 2002) (third parties may enforce arbitration agreements where "the right of the nonsignatory is expressly provided for in the agreement"); *Fikham v. BMW of North America LLC*, No. 19-03963 VAP, 2019 WL 6721626, at *2 (C.D. Cal. Oct. 15, 2019) (same); *Rizvi v. BMW of North America LLC*, Case No. 5:20-cv-00229-EJD, 2020 WL 2992859, at *2–3 (N.D. Cal. June 4, 2020) (same).

Williams Decl., Ex. 4.  Where, as here, the parties have clearly and unmistakably agreed that an arbitrator should decide the validity and applicability of an arbitration provision, the FAA "'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.'"  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *Rent-A-Center, West, Inc. v. Jackson*, 561 US 63, 68 (2010) (same); *Henry Schein*, 139 S.Ct. at 527–30 ("When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract."); *Coulter*, 2021 WL 735726 at *4 (finding that the CreditWorks Terms of Use's delegation clause "constitutes a 'clear and unmistakable' delegation clause under *Henry Schein* and delegates the exclusive authority to resolve 'all issues' to the arbitrator, including the 'scope and enforceability' of the Arbitration Provision"); *Morgan*, 2022 WL 681359, at *1 (same); *Stephens*, 2022 WL 2716177, at *6 (same).  In short, because the Terms of Use makes an unambiguous expression of intent to arbitrate arbitrability, any question over whether Plaintiff's claims fall within the arbitration clause are for an arbitrator to decide.  *Id*.

But even if there had not been such delegation, it is plain that Plaintiff's claim against EIS is arbitrable.  In the Second Circuit, "[t]o determine if a dispute falls within the scope of an arbitration agreement, a court should classify the particular clause as either broad or narrow." *Lebovits v. Cavalry Portfolio Services, LLC*, No. 20-CV-01116 (KMK), 2021 WL 1198967, at *7 (S.D.N.Y. Mar. 29, 2021) (quoting *Boss Worldwide LLC v. Crabill*, No. 19-CV-2363, 2020 WL 1243805, at *3 (S.D.N.Y. Mar. 16, 2020) (quotation marks omitted)).  "'Broad' clauses purport to refer all disputes to arbitration; 'narrow' clauses limit arbitration to specific types of disputes."  *Id*. (quoting *Camferdam v. Ernst & Young Int'l, Inc.*, No. 02-CV-10100,

2004 WL 1124649, at *1 (S.D.N.Y. May 19, 2004).  As the court explained in *Lebovits*, "[w]hen 'the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.'"  *Id*. (quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (citation and quotation marks omitted)).  This court has further explained that "'if the arbitration clause is broad, it is presumptively applicable to disputes involving matters going beyond the interpretation or enforcement of particular provisions of the contract which contains the arbitration clause.'" *Id*. (citations omitted).

Here, at the outset, the Terms of Use admonishes:  "For the avoidance of doubt,  this Agreement expressly applies to . . . any and all transactions between you and ECS through the Websites, including for the provision of any Services or of any credit, personal, financial or other  information  delivered  as  part  of  or  in  conjunction  with  free  Services  or  paid Services . . . ."  Williams Decl., Ex. 4.  The Arbitration Agreement, in turn, provides that the parties agreed to arbitrate "all disputes and claims between us arising out of or relating to this Agreement  to  the  maximum  extent  permitted  by  law."  *Id*.  "This type of 'expansive language ... suggest[s] a broad arbitration clause.'"  *Lebovits*, 2021 WL 1198967, at *7 (quoting *Louis Dreyfus*, 252 F.3d at 225);  *Marcus v. Frome*, 275 F. Supp. 2d 496, 504 (S.D.N.Y. 2003) ("[A]ny dispute, controversy or claim arising out of or relating to this Agreement" is a broad arbitration clause.); *Vera v. Saks & Co.*, 218 F. Supp. 2d 490, 494 (S.D.N.Y. 2002) ("Any dispute ... arising out of or relating to this Agreement" found to be a broad arbitration clause) aff'd,  335 F.3d 109 (2d Cir. 2003);  *ACE Capital Re Overseas Ltd. v. Cent. United Life Ins. Co.*, 307 F.3d 24, 26 (2d Cir. 2002) ("[A]ny dispute [that] shall arise between the parties ... with

reference to the interpretation of this Agreement or their rights with respect to any transaction involved" held to be a broad arbitration clause); *cf. U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 182 F.R.D. 97, 101 (S.D.N.Y. 1998) ("[A]ny dispute arising under this charter" is a broad arbitration clause.), aff'd, 241 F.3d 135 (2d Cir. 2001); *see also Oldroyd v. Elmira Sav. Bank, FSB*, 134 F.3d 72, 76 (2d Cir. 1998) ("Any dispute, controversy or claim arising under or in connection with th[e] Agreement" is a broad arbitration clause.), abrogated on other grounds by *Katz v. Cellco P'ship*, 794 F.3d 341 (2d Cir. 2015); C*ollins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16, 20 (2nd Cir. 1995) ("'Any claim or controversy arising out of or relating to th[e] agreement' is the paradigm of a broad clause.").

Here, the evidence establishes that Plaintiff's claims fall within the broadly worded scope of the Arbitration Agreement. To start, in signing up with CreditWorks, Plaintiff provided express consent under the FCRA to access the information in her EIS credit file. Williams Decl., Exs. 3 & 4. EIS, in turn, provided Plaintiff with regular access to how information appears in her credit file. *Id*. ¶¶ 8 and 9. Through CreditWorks, Plaintiff obtained reports and alerts that showed how the Affirm accounts were being reporting. *Id*., ¶ 9. Based upon that information, Plaintiff lodged disputes with EIS and, ultimately, filed this lawsuit. *Id*. Reading the contract as a whole, and given the broad interpretation courts lend to the terms "arising out of or relating to," Plaintiff's claims are subject to arbitration.

## II.    <u>THE ACTION MUST BE STAYED PENDING ARBITRATION</u>

Section 3 of the FAA expressly provides that where, as here, a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court "shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see also Abel v. All Green Bldg. Servs. of N.Y. LLC*, No.

16-CV-8522, 2017 WL 5468764, at *2 (S.D.N.Y. Nov. 14, 2017) (finding claims arbitrable but denying motion to dismiss and staying litigation pending arbitration); *Katz*, 794 F.3d at 345–47 (holding that the FAA "mandate[s] a stay of proceedings when all of the claims in an action have been referred to arbitration").  Because Plaintiff must be compelled to arbitrate all of her claims against EIS, the action should be stayed pending completion of arbitration.

## **CONCLUSION**

For the foregoing reasons, EIS respectfully requests that the Court grant this Motion, enter an order directing Plaintiff to arbitrate her claims against EIS, and stay this action pending the completion of arbitration.

Dated:  August 15, 2022                JONES DAY

By: */s/ Rachel C. Karpoff*
       Rachel C. Karpoff

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.