# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

ALANA CIMILLO,

                Plaintiff,

     v.

AFFIRM, INC., and EXPERIAN INFORMATION
SOLUTIONS, INC.,

                Defendants.

Case No. 7:21-cv-09132-VB

## DECLARATION OF DAVID WILLIAMS IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION

JONES DAY
250 VESEY STREET
NEW YORK, NEW YORK  10281
TEL: (212) 326-3939

ATTORNEYS FOR DEFENDANT
EXPERIAN INFORMATION SOLUTIONS, INC.

## DECLARATION OF DAVID WILLIAMS

I, David Williams, declare and state:

1.      I am over the age of 18 years old.  I am the VP, Business Governance for ConsumerInfo.com, Inc. ("CIC") in Costa Mesa, California.  CIC also does business as Experian Consumer Services ("ECS").  I have been employed by CIC since June of 2001.  I make this declaration in support of Experian Information Solutions, Inc.'s ("EIS") Motion to Compel Arbitration.  My duties at CIC throughout the course of my employment require that I be familiar with, among other things, the marketing, advertising and sales of CIC consumer credit products, including services that consumer enroll in at Experian websites, as well as the Terms of Use governing such services.  Except where otherwise stated, the facts stated in this Declaration are of my own personal knowledge, including knowledge acquired in the course and scope of my job responsibilities and through the review of pertinent documents maintained as business records by CIC in the course and scope of CIC's business, documents relating to CIC's internet advertising, and documents relating to sales of CIC's credit products and services.  If called upon to do so, I could and would competently testify to the facts stated below.

2.      EIS, the named defendant in the above-captioned lawsuit, is an affiliate of CIC/ECS.  CIC/ECS and EIS are both wholly-owned subsidiaries of Experian Holdings, Inc., and the parent company is Experian plc.

3.      On July 28, 2019, Plaintiff Alana Cimillo enrolled in CreditWorks.  In order to successfully enroll, Plaintiff had to complete two webforms.  The first form required Plaintiff to enter her personal information—*i.e.*, her name, address, phone number, and e-mail address. After she did so, Plaintiff had to click the "Submit and Continue" button on the form to continue with the enrollment process.  A true and correct representation of the first webform as it would have appeared when Plaintiff enrolled in CreditWorks℠ is attached as **Exhibit 1** to this

Declaration. Plaintiff clicked the "Submit and Continue" button, and was presented with a second form to complete. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button.

4.     The second webform required Plaintiff to enter her social security number, date of birth, and a username and password. Immediately below the boxes to enter and confirm her password, was the following disclosure: "By clicking "Submit Secure Order": I accept and agree to your Terms of Use Agreement, as well as acknowledge receipt of your Privacy Policy and Ad Targeting Policy." A true and correct representation of the second webform as it would have appeared when Plaintiff enrolled in CreditWorks℠ is attached as **Exhibit 2** to this Declaration. The phrase "**Terms of Use Agreement**" in the disclosure above was off-set in blue text and, if clicked, would have presented the consumer with the full text of the agreement. That is, the phrase "Terms of Use Agreement" in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the "Submit Secure Order" button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink "**Terms of Use Agreement**." When a consumer clicked on the **Terms of Use Agreement**" hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure containing the full-text hyperlink to the Terms of Use Agreement was a large purple button that reads: "Submit Secure Order." The webform, the disclosure, and the "Submit Secure Order" button appeared on a single webpage.

5.     After entering her information, Plaintiff clicked the "Submit Secure Order" order button, thereby accepting and agreeing to the Terms of Use Agreement. I know this to be the case because she would not have been able to successfully enroll in CreditWorks℠ unless she clicked that button. A true and correct copy of the Terms of Use that was in effect when Plaintiff enrolled

in CreditWorks℠ is attached as **Exhibit 3** to this Declaration. After enrolling, Plaintiff has continuously used her service, including after the current version of the Terms of Use came into effect. A true and correct copy of the current (operative) version of the Terms of Use Agreement is attached as **Exhibit 4** to this Declaration.

6.      The Terms of Use Agreement has a section entitled, "Amendments," which advised Plaintiff that she would be bound by the then-current Terms of Use each time she "order[ed], access[ed], or use[d]" any of the Services or Websites described in the agreement: "Each time you order, access or use any of the Services or Websites, you signify your acceptance and agreement, without limitation or qualification, to be bound by the then current Agreement." While all versions of the Terms of Use allowed Plaintiff to opt-out of amendments to the arbitration clause, at no time did Plaintiff ever reject any changes that were made. As noted, after she enrolled in CreditWorks, Plaintiff has continuously used CreditWorks, which binds her to the current version of the Terms of Use Agreement.

7.      Every version of the Terms of Use that was in effect during Plaintiff's enrollment in CreditWorks contains an Arbitration Agreement, which requires her to litigate, among other things, "all disputes and claims between us arising out of or relating to this Agreement to the maximum extent permitted by law." The Arbitration Agreement defines "ECS" and "us" to include its "parent entities, subsidiaries, [and] affiliates . . . ." So does the "Overview and Acceptance of Terms" section of the contract. During the entire time that Plaintiff has been enrolled in CreditWorks, EIS has been an affiliate of ECS. By including EIS (an affiliate) within the definition of "ECS," the Terms of Use make EIS a party to the contract, as well as a party to the Arbitration Agreement contained within that contract. Moreover, by including EIS within the "Overview and Acceptance of Terms" section, as well as within the definition of ECS in the

Arbitration Agreement, the parties intended for EIS to benefit under the contract.  The Arbitration Agreement expressly incorporates the AAA rules.

8.     At all times relevant to this action, EIS contributed to the services that CreditWorks subscribers receive by providing regular access to how information appears in their EIS credit files, including changes to their credit file information.  Further, all CreditWorks subscribers are required to provide written authorization under the FCRA to obtain their credit report and/or credit score(s) on a recurring basis from EIS through CreditWorks.  The Terms of Use cover the provision of "Services," which is defined to include services to which EIS contributed as the provider of credit information—including CreditWorks and the provision of "credit report(s), credit risk score(s), credit monitoring, credit score monitoring and credit score tracking (including all the data and information contained therein), the receipt of any alerts notifying [consumers] of changes to the information contained in [their] credit report(s)."

9.     I understand that Plaintiff alleges that EIS reported inaccurate information about various Affirm accounts.  Plaintiff learned how EIS was reporting those accounts through her CreditWorks subscription.  I understand that Plaintiff alleges that she learned of the Affirm accounts in 2019.  Based upon ECS's business records, throughout 2019, Plaintiff received alerts through CreditWorks concerning the Affirm accounts.  She also obtained numerous credit reports through CreditWorks that would have shown how the Affirm accounts were reporting on her EIS credit file.  On January 2, 2021, Plaintiff obtained another credit report through CreditWorks that would have shown how the Affirm accounts were reporting on her EIS credit file.  That same day, Plaintiff lodged a dispute with EIS over the reporting of the Affirm accounts.  Plaintiff sent multiple additional disputes to EIS, each time logging on to CreditWorks to obtain a credit report at or near the time of the dispute.  I understand that Plaintiff alleges that, between July 2021 and

October 2021, she applied for credit with three different car dealerships.  At the time of each of those applications, Plaintiff obtained credit reports and alerts through CreditWorks.

     I declare, under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed this 15th day of August, 2022, in Costa Mesa, California.

David Williams