UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALANA CIMILLO,<br><br>                Plaintiff,<br><br>    v.<br><br>AFFIRM, INC., and EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>                Defendants. | Case No. 7:21-cv-09132-VB |

**REPLY MEMORANDUM IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

JONES DAY
250 VESEY STREET
NEW YORK, NEW YORK  10281
TEL: (212) 326-3939

ATTORNEYS FOR DEFENDANT
EXPERIAN INFORMATION SOLUTIONS, INC.

## TABLE OF CONTENTS

                                                                               Page

I.     PLAINTIFF ENTERED INTO A VALID AGREEMENT TO ARBITRATE ............- 1 -

II.    ARBITRABILITY HAS BEEN DELEGATED TO AN ARBITRATOR ....................- 1 -

III.   EIS DID NOT WAIVE ITS RIGHT TO ARBITRATE .................................................- 4 -

        1.      The Question Of Waiver Has Been Delegated To An Arbitrator ......................- 4 -

        2.      EIS Did Not Waive Its Right To Arbitrate ........................................................- 6 -

# **TABLE OF AUTHORITIES**

Page

**CASES**

*CMS Inv. Hldgs., LLC v. Castle*,
  No. 14-Cv-9381, 2016 WL 4557115 (S.D.N.Y. Aug. 31, 2016)..............................................5

*Coca-Cola Bottling Co. of New York, Inc. v. Soft Drink & Brewery Workers Union Loc. 812*,
  242 F.3d 52 (2d Cir. 2001)........................................................................................................8

*Contec Corp. v. Remote Sols. Co.*,
  398 F.3d 205 (2d Cir. 2005)......................................................................................................6

*Coronel v. Bank of Am., N.A.*,
  No. 19-8492, 2022 WL 3443985 (D.N.J. Aug. 17, 2022) .......................................................10

*Craig v. Discover Bank*,
  No. 21-CV-1407, 2022 U.S. Dist. LEXIS 105524 (S.D. Cal. June 13, 2022)..........................4

*De Jesus v. Gregorys Coffee Mgmt. LLC*,
  No. 20-CV-6305, 2022 WL 3097883 (E.D.N.Y. Aug. 4, 2022)................................................7

*Galeana v. Mahasan Inc.*,
  No. 14-CV-3625, 2019 WL 3024588 (S.D.N.Y. July 11, 2019)............................................10

*Hamilton v. Atlas Turner, Inc.*,
  197 F.3d 58 (2d Cir. 1999)........................................................................................................9

*Harrington v. Atl. Sounding Co.*,
  602 F.3d 113 (2d Cir. 2010)......................................................................................................1

*Henry Schein Inc. v. Archer & White Sales Inc.*,
  139 S. Ct. 524 (2019)................................................................................................................2

*Henry v. Turner Constr. Co.*,
  No. 09 Civ. 9366, 2010 WL 2399423 (S.D.N.Y. June 14, 2010)..............................................8

*Herrera v. Manna 2nd Ave. LLC*,
  No. 1:20-cv-11026, 2022 WL 2819072 (S.D.N.Y. July 18, 2022)...........................................6

*In re Generali Covid-10 Travel Ins. Litig.*,
   577 F. Supp. 3d 284 (S.D.N.Y. 2021)..................................................................................7

*Jamieson v. Sec. Am., Inc.*,
   No. 19-CV-1817, 2019 WL 6977126 (S.D.N.Y. Dec. 20, 2019) ...............................................1

*Katsoris v. WME IMG, LLC*,
   237 F. Supp. 3d 92 (S.D.N.Y. 2017)......................................................................................6

*Kramer v. Hammond*,
   943 F.2d 176 (2d Cir. 1991)...............................................................................................10

*Kubala v. Supreme Prod. Servs., Inc.*,
   830 F.3d 199 (5th Cir. 2016) ............................................................................................2, 3

*Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*,
   67 F.3d 20 (2d Cir. 1995) .....................................................................................................9

*Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
   626 F.3d 156 (2d Cir. 2010).................................................................................................7

*Marciano v. DCH Auto Grp.*,
   14 F. Supp. 3d 322 (S.D.N.Y. 2014).....................................................................................1

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017)...................................................................................................4

*Mobile Real Est., LLC v. NewPoint Media Grp., LLC*,
   460 F. Supp. 3d 457 (S.D.N.Y. 2020)......................................................................2, 3, 4, 6

*Morgan v. Sundance, Inc.*,
   142 S.Ct. 1708 (2022).................................................................................................6, 7, 8

*Pierre v. Rochdale Vill. Inc.*,
   No. 18-CV-6383, 2020 WL 6799635 (E.D.N.Y. Nov. 19, 2020)...........................................9

*PPG Indus., Inc. v. Webster Auto Parts, Inc.*,
   128 F.3d 103 (2d Cir. 1997).................................................................................................9

*Republic of Ecuador v. Chevron Corp.*,
   638 F.3d 384 (2d Cir. 2011).................................................................................................5

*Rush v. Oppenheimer & Co.*,
　779 F.2d 885 (2d Cir. 1985)..................................................................................................7

*Soriano v. Experian Info. Sols., Inc.*,
　No. 22-cv-197, 2022 WL 6734860 (M.D. Fla. Oct. 11, 2022)................................................10

*Starkey v. G Adventures, Inc.*,
　796 F.3d 193 (2d Cir. 2015)....................................................................................................1

*Thyssen, Inc. v. Calypso Shipping Corp., S.A.*,
　310 F.3d 102 (2d Cir. 2002)..................................................................................................10

*Toure v. Thunder Lube Inc.*,
　No. 17-cv-0657, 2019 WL 4805197 (E.D.N.Y. Sept. 30, 2019)............................................10

*U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc.*,
　No. 19 Civ. 4355, 2021 WL 1539225 (S.D.N.Y. Apr. 19, 2021)............................................9

**STATUTES**

FAA § 2............................................................................................................................2, 3

FAA § 4.........................................................................................................................2, 3, 4

**OTHER AUTHORITIES**

COM. ARB. RULES & MEDIATION PROCS. § R-7(b) (AM. ARB. ASS'N 2022)...................................6

## I.     <u>PLAINTIFF ENTERED INTO A VALID AGREEMENT TO ARBITRATE</u>

Plaintiff does not dispute that she entered into an agreement to arbitrate with EIS. In fact, in her declaration, she admits that she "signed up with Experian online to receive free credit reports".[1] While Plaintiff claims that she does not "*recall*" signing up for CreditWorks, or having ever seen or entered into an agreement to arbitrate (*see id*.), her lack of recollection is insufficient to defeat EIS's unrebutted evidence establishing that Plaintiff enrolled in CreditWorks, and could not have done so without clicking a button acknowledging her agreement to be bound by the Terms of Use. *See*, *e.g.*, *Jamieson v. Sec. Am., Inc.*, No. 19-CV-1817, 2019 WL 6977126, at *5 (S.D.N.Y. Dec. 20, 2019) (Plaintiff's "contention that she does not recall agreeing to arbitrate is insufficient to invalidate the provisions."); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 332 (S.D.N.Y. 2014) (same); *Starkey v. G Adventures, Inc.*, 796 F.3d 193, 195–97 (2d Cir. 2015) (same). Thus, when Plaintiff clicked the "Submit Secure Order" button, she agreed to the Terms of Use, including the contract's agreement to arbitrate her disputes with EIS.[2]

## II.     <u>ARBITRABILITY HAS BEEN DELEGATED TO AN ARBITRATOR</u>

Plaintiff contends that her claims are not arbitrable, *see* Opp. at 14–19 ("[T]he Court should deny Experian's Motion because Plaintiff's claims are not covered by the arbitration provision."), and that the scope of the Arbitration Agreement should be narrowly interpreted. *See id*. at 19–22 ("The Arbitration Provision should be interpreted narrowly"). None of the arguments Plaintiff presses may be addressed in this Court. As EIS's motion established, the Terms of Use delegate "all issues" to an arbitrator, including all questions as to the scope and enforceability of the

---

[1] *See* Declaration of Alana Cimillo ("Cimillo Decl.") [ECF No. 66], ¶ 5.

[2] Plaintiff also argues that she does not "*recall*" relinquishing "her Seventh Amendment right to a jury trial." Cimillo Decl., ¶ 5. But the law is well-settled: By agreeing to arbitrate her claims, Plaintiff agreed to resolve her claims before the AAA, not a state or federal court, thus giving up any right she may have had to a jury trial. *Harrington v. Atl. Sounding Co.*, 602 F.3d 113, 126 (2d Cir. 2010).

Arbitration Agreement. Williams Decl., Exs. 3 & 4. The contract also incorporates the AAA rules, which independently "serves as 'clear and unmistakable evidence' of the intent to delegate questions of arbitrability." *Mobile Real Est., LLC v. NewPoint Media Grp., LLC*, 460 F. Supp. 3d 457, 470 (S.D.N.Y. 2020) (citation omitted). Plaintiff does not challenge the enforceability of the delegation clause. Thus, Plaintiff's challenges to arbitrability are for an arbitrator to decide. *Henry Schein Inc. v. Archer & White Sales Inc.*, 139 S. Ct. 524, 529 (2019).

Nonetheless, Plaintiff insists that this Court must address whether her claims are arbitrable because: (1) a court must determine whether the FAA applies to her claims, and (2) "this Court can only compel arbitration if Plaintiff's dispute is within the provisions of § 1 and § 2 [of the FAA]." Opp. at 22–24. Plaintiff does not argue that her agreement to arbitrate falls outside Section 1. Instead, she contends that her claims fall outside of Section 2 because (1) that section applies only to "a controversy thereafter arising out of such contract," and (2) her dispute with EIS (for the reasons stated in her arbitrability challenges) do not arise out of the Terms of Use. *Id*. Plaintiff is confused.

Section 2 provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract". Section 2 "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Mobile Real Est.*, 460 F. Supp. 3d at 468 (citation omitted). Under Section 2, courts simply ask "whether the parties entered into a valid agreement to arbitrate *some* set of claims." *See Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (emphasis in original). If so, a court will proceed under Section 4 of the FAA, and determine whether the particular claims at issue in the

matter are subject to arbitration under the agreement. *Mobile Real Est.*, 460 F. Supp. 3d at 468–69 (citing 9 U.S.C. § 4). This is the "two-part test" that the Second Circuit (and other circuits) follow: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Mobile Real Est.*, 460 F. Supp. 3d at 469 (quoting *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)). Plaintiff's argument runs counter to this settled body of law, and would render Section 4 of the FAA meaningless.

The fallacy of Plaintiff's reasoning is vividly illustrated by the Fifth Circuit's decision in *Kubala*, which applied the same "two-part test" that the Second Circuit follows. There, the district court "erroneously held that there is no arbitration agreement [because] [t]he court appears to have thought that the question at the first step of the analysis is whether there is an agreement to arbitrate *the claim currently before the court*." *Kubala*, 830 F.3d at 202 (emphasis in original). That was error because "the only issue at the first step is whether there is any agreement to arbitrate any set of claims." *Id*. The determination of "whether that agreement covers the claim at bar is the second step." *Id*. Just as in *Kubala*, the proper focus under Section 2 of the FAA "is to examine only the formation issue," and, like *Kubala*, "it is obvious that these parties validly formed an agreement to arbitrate *some set of claims*." *Id.* (emphasis added).

On appeal, the plaintiff in *Kubala* pressed the same arguments that Plaintiff makes here, which the Fifth Circuit rightly rejected:

> [A]dopting the district court's mistaken approach, Kubala attempts to conflate the first two prongs of the contract-formation analysis. He therefore urges that the contract, properly interpreted, does not cover his claim, so there is no agreement to arbitrate. As explained above, these issues of contract interpretation do not factor into the first step, because they do not go to contract formation.

*Id*. at 203. So too here. Plaintiff argues that, under Section 2, there is no agreement to arbitrate because his claims are not arbitrable. But the inquiry under Section 2 is simply whether

the parties have *entered into* a contract to settle by arbitration a controversy thereafter arising under such contract (which Plaintiff and EIS plainly have done), *not* whether a particular dispute falls within the scope of that contract—a separate inquiry that either is answered by a court under Section 4 of the FAA or by an arbitrator if, as here, arbitrability issues have been delegated. *Mobile Real Est.*, 460 F. Supp. 3d at 469–70.

Finally, Plaintiff argues that the arbitration agreement in the Terms of Use in effect when she enrolled governs her dispute, rather than the arbitration agreement in the current version of the Terms. Opp. at 24–25. The argument is a *non sequitur*. Either way, her claims must be compelled to arbitration, as *both* versions of the Terms of Use require all disputes related to or arising out of the agreement between Plaintiff and "ECS"—expressly defined in both versions of the agreement to include ECS's "affiliates"—to be resolved in arbitration. As both versions also expressly delegate "[a]ll issues" to an arbitrator, the question of which agreement's arbitration clause will apply in arbitration goes to the question of arbitrability, which is for an arbitrator to resolve.[3]

## III. EIS DID NOT WAIVE ITS RIGHT TO ARBITRATE

### 1. The Question Of Waiver Has Been Delegated To An Arbitrator

Under the Arbitration Agreement, the question of waiver must be decided by an arbitrator. Although courts may decide questions of waiver when the "waiver argument is based on [the] defense of [] litigation in the district court," *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80–81 (2d

---

[3] Plaintiff's citation to *Craig v. Discover Bank*, No. 21-CV-1407, 2022 U.S. Dist. LEXIS 105524 (S.D. Cal. June 13, 2022), is misplaced. In moving to compel arbitration in *Craig*, EIS introduced into evidence the version of the Terms of Use that was in effect when Craig enrolled (from 2017), as well as a February 2022 version (the current version at that time). Unlike the agreements applicable to Plaintiff's membership here, the Arbitration Agreement in the 2017 version in *Craig* had a provision that excluded FCRA claims. Although that carve-out was removed as of January 2019 and never added back, EIS mistakenly did not present such evidence in *Craig*. Instead, the only other evidence EIS presented in support of its motion in *Craig* was the February 2022 version, which came into effect after Craig had sued. Because, as the court in *Craig* noted, amendments to the dispute resolution provisions occurring after a dispute is filed are ineffective absent mutual consent, and there was no evidence that the FCRA carve-out was deleted prior to Craig's lawsuit, the Court denied the motion. *Craig* is inapposite because none of the versions of the Terms applicable to Plaintiff's membership has a FCRA carve out. Thus, under *all* versions applicable to her membership, Plaintiff's claims must be compelled to arbitration.

Cir. 2017), waiver must be decided by an arbitrator when the arbitration agreement provides "'clear and unmistakable evidence' that the parties intended these issues to be decided by the arbitral panel in the first instance." *Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 394 (2d Cir. 2011). In *Republic of Ecuador*, the parties' arbitration agreement expressly incorporated arbitration rules that gave the arbitrator the authority to decide objections to the validity of the arbitration agreement. *Id*. The Second Circuit held that waiver was therefore for the arbitrator to decide. *Id*.

*Republic of Ecuador* was specifically applied to the issue of waiver by litigation conduct in *CMS Inv. Hldgs., LLC v. Castle*, No. 14-Cv-9381, 2016 WL 4557115 (S.D.N.Y. Aug. 31, 2016). There, the court held that the parties had agreed to have an arbitrator decide waiver by litigation conduct where the arbitration agreement stated that "disputes concerning the arbitration agreement's 'validity ... shall be submitted to and ruled on by the Arbitrator'" because the issue of "waiver [] goes to the validity of the arbitration agreement." *Id*. at *6. Citing to the Second Circuit's decision in *Republic of Ecuador*, the court held that "precedent dictates that the parties did, in fact, clearly and unmistakably refer the waiver issue to the arbitrator, so the Court must compel arbitration on that basis." *Id.* at *5. The *CMS* court found "no relevant difference" between the type of waiver alleged in *Republic of Ecuador* and waiver by litigation conduct. *Id*. at *6.[4]

Here, there is even more evidence that the parties intended for questions of validity, including waiver, to be decided by an arbitrator. The Arbitration Agreement expressly delegates "all issues" to an arbitrator. *See* Williams Decl., Exs. 3 & 4. "All issues" obviously subsumes waiver, including waiver by litigation conduct. The Arbitration Agreement also incorporates the

---

[4] Plaintiff cites a different district court decision suggesting that parties cannot delegate the question of waiver by litigation conduct to an arbitrator. *See* Opp. at 8 (citing *Pacelli v. Augustus Intel., Inc.*, 459 F. Supp. 3d 597, 613–14 (S.D.N.Y. 2020)). Respectfully, EIS believes that that decision is incorrect, that the Second Circuit's holding in *Republic of Ecuador* controls here, and that this Court should adopt the reasoning of *CMS* and hold that the parties' intent to delegate "all issues" to an arbitrator, including issues of validity under the AAA rules, controls and requires waiver to be decided by an arbitrator.

AAA rules, *see id.*, which provide that the arbitrator "shall have the power to determine the existence or *validity* of a contract of which an arbitration clause forms a part." COM. ARB. RULES & MEDIATION PROCS. § R-7(b) (AM. ARB. ASS'N 2022). The Arbitration Agreement's broad delegation clause and incorporation of the AAA rules is clear and unmistakable evidence of the parties' intent to delegate all questions of validity, including waiver by litigation conduct, to the arbitrator. *See, e.g., Contec Corp. v. Remote Sols. Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (express incorporation of AAA arbitration rules "serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"), *Mobile Real Est.*, 460 F. Supp. 3d at 470 (same); *Katsoris v. WME IMG, LLC*, 237 F. Supp. 3d 92, 104–05 (S.D.N.Y. 2017) (same).

### 2. EIS Did Not Waive Its Right To Arbitrate

Even if this Court decided the issue, EIS has not waived its right to compel arbitration. While prejudice is no longer a factor in the waiver analysis, *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708 (2022), a party claiming waiver still must show that the moving party "knowingly relinquish[ed]" its right to arbitrate. *Id.* at 1714. In *Herrera v. Manna 2nd Ave. LLC*, No. 1:20-cv-11026, 2022 WL 2819072, at *7–10 (S.D.N.Y. July 18, 2022), the court considered *Morgan* and analyzed waiver under both the traditional contractual waiver test and the Second Circuit's pre-*Morgan* arbitration waiver test, stripped of a prejudice requirement. Traditional contractual waiver requires "a clear manifestation of an intent … to relinquish [a] known right." *Id.* at *8 (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.*, 448 F.3d 573, 585 (2d Cir. 2006)). Absent prejudice, the pre-*Morgan* Second Circuit arbitration waiver test considers (1) the time elapsed from when litigation was commenced until the request for arbitration and (2) the amount of litigation to date, including motion practice and discovery. *Id.* at *9–10.

Plaintiff cannot meet her burden here under either test. After *Morgan*, courts in this Circuit

maintain that "any doubts concerning whether there has been a waiver are resolved in favor of arbitration." *De Jesus v. Gregorys Coffee Mgmt. LLC*, No. 20-CV-6305, 2022 WL 3097883, at *7 (E.D.N.Y. Aug. 4, 2022) (citation omitted). As the Eastern District explained in *De Jesus*, *Morgan* did not reverse the long-standing principle that waiver of arbitration is "not to be lightly inferred," and waiver should not be found absent "protracted litigation" suggesting the party intended to forego its right to arbitrate. *Id.* at *7 (citing *Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x 38, 39 (2d Cir. 2013); *Crysen/Montenay Energy Co. v. Shell Oil Co.*, 226 F.3d 160, 162 (2d Cir. 2000)). The record of litigation activity in this case does not show "protracted litigation" by EIS, much less a clear intent on EIS's part to waive its arbitration rights.

Plaintiff emphasizes that EIS moved to compel arbitration approximately nine months after the complaint was filed, but "delay alone cannot support a finding of waiver in the context of arbitration." *De Jesus*, 2022 WL 3097883, at *8; *see also In re Generali Covid-10 Travel Ins. Litig.*, 577 F. Supp. 3d 284, 294 (S.D.N.Y. 2021) ("Courts have found delays longer than a year . . . not to constitute waiver.") (citing *Thyssen, Inc. v. Calypso Shipping Corp., S.A.*, 310 F.3d 102, 105 (2d Cir. 2002) (citing cases finding no waiver despite delays of up to three years)), *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 887 (2d Cir. 1985) ("It is beyond question that defendants' delay in seeking arbitration during approximately eight months of pretrial proceedings is insufficient by itself to constitute a waiver of the right to arbitrate"). It is also worth noting that this case was stayed for three of those nine months, *at Plaintiff's request*, in order to attempt a resolution. *See* accompanying Declaration of Brett M. Weinstein, ¶¶ 18–19, 21–22.[5]

---

[5] Plaintiff also points to some other recent cases where EIS moved to compel arbitration sooner (*see* Opp. at 10), but Second Circuit precedent is clear that delay alone is not sufficient to find waiver, and the Court must apply the waiver analysis "to the specific context of each particular case." *Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 626 F.3d 156, 159 (2d Cir. 2010). That EIS may have acted differently in other cases does not mean that it has waived arbitration rights here.

Much of Plaintiff's waiver argument is based on the litigation activity that she, not EIS, engaged in before the stay—the discovery that she propounded to and obtained from EIS, other defendants, and third parties, and the purported "time and resources" that her counsel spent on those efforts over approximately six months. *See* Declaration of Adam G. Singer [ECF No. 65], ¶¶ 19–25, 27, 29, 31. But the Supreme Court's decision in *Morgan* makes clear that prejudice is not part of the waiver analysis, which instead "focuses on the actions of the person who held the right"—in other words, EIS. 142 S. Ct. at 1713. EIS's own conduct has been relatively minimal. EIS's motion to compel arbitration is the first substantive motion filed in the case. Weinstein Decl. ¶ 28. No depositions have been taken. *Id.* ¶ 30. EIS took no discovery from its co-defendant or any third parties. *Id.* ¶¶ 31–32. EIS served single sets of interrogatories, requests for production, and requests for admission on Plaintiff, who responded in cursory fashion to only the interrogatories and requests for production before the case was stayed. *Id.* ¶¶ 13, 20. As required by the Federal Rules, EIS prepared for and attended a Rule 26(f) conference, served initial disclosures and responses to Plaintiff's written discovery. *Id.* ¶¶ 3, 10–11, 14. EIS also participated in efforts to settle the case, including mediation, but only after the litigation was stayed—again, at Plaintiff's request. *Id.* ¶¶ 19, 21–22, 24.

None of EIS's activity rises to the level of "protracted litigation" that the Second Circuit requires for arbitration rights to be waived. "Merely answering on the merits, appearing at hearings, and participating in discovery, without more, will not necessarily constitute waiver." *Henry v. Turner Constr. Co.*, No. 09 Civ. 9366, 2010 WL 2399423, at *2 (S.D.N.Y. June 14, 2010) (citation omitted). Instead, "cases in which we have found waiver have involved substantially more protracted involvement in litigation . . . often with the party charged with waiver delaying until the very last opportunity or even until it has lost on the merits." *Coca-Cola Bottling Co. of*

*New York, Inc. v. Soft Drink & Brewery Workers Union Loc. 812*, 242 F.3d 52, 58 (2d Cir. 2001) (collecting Second Circuit cases). There are no such facts here, where EIS engaged in no substantive motion practice and only one round of written discovery with Plaintiff. Indeed, in cases where the movant engaged in similar amounts of litigation activity, district courts in this Circuit declined to find waiver. *See, e.g., Pierre v. Rochdale Vill. Inc.*, No. 18-CV-6383, 2020 WL 6799635, at *7 (E.D.N.Y. Nov. 19, 2020) (granting motion to compel arbitration filed a year after complaint, during which defendant filed an answer, participated in mediation and settlement negotiations, and exchanged documents and written discovery, but took no depositions and did not file substantive motions); *U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, No. 19 Civ. 4355, 2021 WL 1539225, at *6–7 (S.D.N.Y. Apr. 19, 2021) (same).

Plaintiff does not cite any similar set of facts where a court in this Circuit found waiver of arbitration rights. Instead, she relies on cases where the movant's litigation activity far exceeded EIS's actions here. *See Louisiana Stadium & Exposition Dist.*, 626 F.3d at 159–161 (*plaintiff* waited 11 months after filing suit and only pursued arbitration after unsuccessfully contesting a motion to transfer and after defendants detailed deficiencies in the complaint); *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 61 (2d Cir. 1999) (defendant forfeited personal jurisdiction defense by waiting four years to file a motion after asserting it in an answer); *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 108 (2d Cir. 1997) (*plaintiff* waited 5 months after counterclaims were filed and only moved to compel arbitration after moving for a protective order on depositions and filing other substantive motions on the counterclaims); *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.*, 67 F.3d 20, 26 (2d Cir. 1995) (defendant engaged in "energetic pursuit of discovery" including depositions, completed discovery, and moved to compel arbitration "[o]nly at the eleventh hour, with trial imminent," in response to plaintiff's motion for summary

judgment); *Kramer v. Hammond*, 943 F.2d 176, 179–80 (2d Cir. 1991) (defendant spent over four years engaging in "extensive pretrial litigation," moved to dismiss for lack of personal jurisdiction, and appealed the issue before moving to compel arbitration); *Coronel v. Bank of Am., N.A.*, No. 19-8492, 2022 WL 3443985 (D.N.J. Aug. 17, 2022) (EIS moved to compel arbitration a year and a half after deadline for moving to compel arbitration had passed and engaged extensively in discovery, including taking the plaintiff's deposition).

Plaintiff leans heavily on a recent decision from the Middle District of Florida, *Soriano v. Experian Info. Sols., Inc.*, No. 22-cv-197, 2022 WL 6734860 (M.D. Fla. Oct. 11, 2022), which emphasized EIS's decision not to plead arbitration as an affirmative defense in denying a motion to compel arbitration. But as the Second Circuit stated in *Thyssen, Inc.*, 310 F.3d at 105–06:

> there is no *per se* rule that arbitration must be pleaded in the answer in order to avoid waiver . . . . Rule 8(c) does require a defendant to set forth any defense of 'arbitration and award,' but this is different from a motion to stay pending arbitration. Rather, it refers to a situation in which an arbitrator has already ruled.

*Thyssen* clearly holds that there is no waiver where there is "no evidence of extensive discovery or substantive motions" by the party that has moved to compel arbitration. *Id*. at 105; *see also Toure v. Thunder Lube Inc.*, No. 17-cv-0657, 2019 WL 4805197, at *4 (E.D.N.Y. Sept. 30, 2019) ("Notably, 'there must be litigation pertaining to substantial issues going to the merits.' . . . Defendants have not waived their right to arbitration because of their failure to include the arbitration defense in their answer.") (citation omitted); *Galeana v. Mahasan Inc.*, No. 14-CV-3625, 2019 WL 3024588, at *4 (S.D.N.Y. July 11, 2019) (no waiver where defendants did not plead arbitration in their answer, attended court conferences, and moved to compel arbitration after nearly a year). Like in *Thyssen*, EIS did not engage in extensive discovery or substantive motion practice before pursuing arbitration.

For these reasons, EIS has not waived its arbitration rights.

Dated:  November 22, 2022	JONES DAY

By: */s/ Brett M. Weinstein*
      Brett M. Weinstein

Attorneys for Defendant
EXPERIAN INFORMATION SOLUTIONS, INC.